**NOT FOR PUBLICATION**                                           **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                          :
JOSEPHINE CARBONE,                        :
                                          :
    Appellant,                             :        Civil Action No. 04-CV-5667 (JLL)
                                          :
v.                                        :
                                          :        **OPINION AND ORDER**
STRATUS SERVICES GROUP, INC.,             :
ET AL.,                                   :
                                          :
    Appellees.                             :
_____:

**LINARES**, **District Judge**.

    This matter comes before the Court on Appellant Josephine Carbone's appeal from the Order of the Honorable Donald H. Steckroth of the United States Bankruptcy Court, District of New Jersey in favor of Appellee Stratus Services Group, Inc. (hereinafter "Stratus"), ordering the turnover of $250,000 held in a trust account with Lowenstein Sandler, P.C. to Stratus, entered September 28, 2004. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 158 (a). The matter is resolved without oral argument.[1] For the reasons stated herein, the appeal is DISMISSED and the decision below is AFFIRMED.

---

[1] After an examination of all submissions in this case and the record from the Bankruptcy Court proceedings, this Court is exercising its discretion pursuant to Bankruptcy Rule 8012 to forego oral argument.

## BACKGROUND

This appeal arises out of the Chapter 11 bankruptcy proceedings In re Anthony A. Dimuzio Construction, Inc., which were later converted to a Chapter 7 proceeding against Anthony A. Dimuzio himself (hereinafter "DiMuzio"), the principal of the original debtor corporation. At the commencement of the bankruptcy proceedings Appellee Stratus possessed a secured claim against Anthony A. DiMuzio Construction, Inc. (hereinafter "DiMuzio Construction") in the amount of $1.15 million. At one point during the proceedings, former trustee Charles Stanziale sought to sell substantially all of the corporation's assets which had not been repossessed and which were in the hands of the debtor. Robert Forst, the potential buyer, was to purchase the assets and apparently intended to continue the business operations of DiMuzio Construction. The proposed sale was to be for $125,000 and allocated $25,000 to Stratus in satisfaction of their secured claim for $1.15 million. Stratus objected to the proposed sale and its objection ultimately caused Mr. Forst to withdraw his offer. Eventually, DiMuzio was able to find a second purchaser with a proposed offer that would allocate more money to Stratus: Mrs. Josephine Carbone (hereinafter "Carbone").[2] In this proposed sale of assets, Carbone would pay Stratus $250,000 in exchange for withdrawing its objection to the sale and Carbone would pay an additional $125,000 to the trustee as payment for the assets of DiMuzio Construction. It is important to note that this agreement (hereinafter "the agreement") was orally

---

[2]Throughout the bankruptcy proceedings, counsel for the Appellant referred to his clients as Mr. *and* Mrs. Carbone. However, this appeal was brought in the name of Mrs. Josephine Carbone alone and the $250,000 came from her own funds. As such, this Court recognizes the Appellant as Mrs. Josephine Carbone.

2

negotiated by DiMuzio and Mr. Jeffrey Raymond (hereinafter "Raymond"), on behalf of Stratus and Carbone apparently did not participate in said negotiations. Subsequently, Josephine Carbone caused $375,000[3] to be deposited in a trust account with the firm of Lowenstein Sandler, P.C. The second proposed sale, however, was never consummated, apparently due to the fact that Appellant decided to withdraw her offer. As a result, Lowenstein Sandler, P.C. moved in the Bankruptcy Court for an order allowing the return of the funds to Carbone. Stratus in turn filed a cross-motion to have the funds turned over to them.[4]

In the aforesaid motion, Appellant argued, as she still maintains before this Court, that the parties' agreement provided that the $250,000 in the trust account was to be paid at the time of the closing of the asset sale and that the closing therefore was a "condition precedent" to the turnover of the funds to Stratus. (Appellant's Br. p. 5). Appellant argues, that inasmuch as the sale never occurred, the $250,000 should be returned to her. Appellee Stratus argues that the parties (Stratus and DiMuzio) negotiated for the $250,000 payment "in exchange for [Stratus] withdrawing its objection to the sale of the Debtor's assets and Stratus's release of a host of parties." (Appellee Brief p. 1). Thus, having withdrawn its objection to the sale and having agreed to release aforesaid parties in the event of a consummated sale, Stratus argues that the $250,000 is now owed to them. Bankruptcy Judge the Honorable Donald H. Steckroth, after two days of hearings, listening to and reading the arguments of all involved parties and considering

---

[3]$250,000 was in exchange for Stratus withdrawing its objection. The remaining $125,000 was for the purchase and sale of assets.

[4] However, ultimately, Lowenstein Sandler, P.C. assumed a neutral position in the matter more similar to that of an interpleader than an interested party.

the testimony of multiple witnesses, agreed with Stratus's position and awarded Stratus the disputed $250,000.

Appellant contends that the Bankruptcy Court erred by (1) quashing the subpoenas issued to Nancy A. Washington, Esq. and Robert Forst; (2) not considering the oral testimony of Nancy A. Washington and Robert Forst; (3) not permitting discovery before a full plenary hearing; (4) enforcing a settlement agreement/contract contrary to its specific conditions and material terms and (5) enforcing a proposed settlement agreement/contract despite the lack of consideration between the parties to the agreement. This Court hears the appeal pursuant to 28 U.S.C. § 158 (a) which grants the district courts of the United States jurisdiction to hear appeals from final orders of bankruptcy courts.

## DISCUSSION

**A.    Standing of Josephine Carbone to Appeal Order of Bankruptcy Court**

Appellee Stratus challenges the standing of Josephine Carbone to appeal the order of the Bankruptcy Court. Thus, before proceeding to arguments raised by Appellant in her brief, the Court will determine whether Appellant has standing to raise this appeal.

In order to satisfy the standing requirements for a bankruptcy appeal, an Appellant must demonstrate that he or she possesses constitutional standing and must also meet the "person aggrieved" standard specific to bankruptcy appeals. U.S. Const. art. III, § 2, cl. 1. Appellee Stratus argues that Carbone cannot meet the requirements of standing to appeal an order of the Bankruptcy Court. Stratus argues that Carbone "did not suffer a concrete, particularized, actual injury that amounts to an invasion of a legally protected interest." (Appellee Br. p.26). They support this assertion with a statement that: "standing is not automatically conferred simply

because one loans money to a principal debtor or becomes involved with a business transaction connected with a debtor in some way." (Id). They further argue that Carbone fails to satisfy prudential standing requirements because she "is not asserting her own legal rights." (Appellee Br. p. 27). Finally, Stratus claims that Carbone has not been aggrieved, and therefore, has no standing to appeal the Bankruptcy Court's decision. (Id).

In her Reply Brief, Carbone argues that since she was a party to the agreement, and as a result, was "pecuniarily affected by the Bankruptcy Court's decision," she has the requisite constitutional, prudential and appellate standing to challenge the Bankruptcy Court's order. (Appellee Reply Br. p. 22-23). Appellant asserts that because the $250,000 at issue came from her own pockets, she has suffered a pecuniary loss and is therefore "aggrieved."

### 1.    Constitutional Standing Analysis

Pursuant to Article III of the U.S. Constitution, the jurisdiction of federal courts is limited to "cases" or "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). The requirements for establishing Article III constitutional standing are:

> "[1] ... the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical [;] [2] ... there must be a causal connection between the injury and the conduct complained of-- the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court[;] [3] ... it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

When interpreting the "injury in fact" requirement, courts have repeatedly held that a party must "show and demonstrate an injury in fact that is concrete, distinct and palpable, and

5

actual or imminent." Interfaith Cmty. Org. v. Honeywell Intern., Inc., 399 F.3d 248 (3d Cir. 2005) (relying on Lujan, 504 U.S. at 560-61). See also, Hill v. Nassberg, 130 Fed. Appx. 615, 616 (3d Cir. 2005). The Supreme Court's recent decision in Friends of Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc., 528 U.S. 167, 181 (2005), stands for the proposition that courts may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action." See also, Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 71 (3d Cir.1990) (quoting United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 n.14 (1973) ("In determining whether a plaintiff satisfies the requirements of constitutional standing, the extent of the injury plaintiff suffered is generally immaterial to the question of injury in fact; an identifiable trifle will suffice.") (internal quotations omitted). Applied to the present facts, it is clear that Appellant Josephine Carbone has indeed suffered a concrete, distinct and palpable injury: she lost $250,000 as a result of the Bankruptcy Court's Order. Her pecuniary loss is sufficient to satisfy the "injury in fact" requirement.

Appellant also satisfies the second requirement, namely, a causal connection between the injury in fact and the conduct complained of. The conduct she complains of was the Bankruptcy Judge's decision to turn over the contested $250,000 to Stratus. The injury in fact was Carbone's loss of that sum. It logically follows that the injury in fact is causally connected to the conduct complained of: the Appellant is $250,000 poorer as a result of the Bankruptcy Court's decision.

The last requirement of the constitutional standing inquiry requires the party to demonstrate the likelihood that a favorable decision will redress that injury. Lujan, 504 U.S. at 560-61. Here, if this Court were to find for the Appellant, such a finding would redress her pecuniary injury. Thus, this Court finds that Josephine Carbone satisfies the third prong of the Lujan analysis.

The required showing for constitutional standing is not particularly onerous. "These requirements ensure that [appellants] have a personal stake or interest in the outcome of the proceedings, sufficient to warrant ... [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on ... [their] behalf." Khodara Environmental, Inc. v. Blakey, 376 F.3d 187, 193 (3d Cir. 2004) (internal quotations omitted). As a result, this Court determines that it would belie the purposes of the standing requirements to deny Appellants the opportunity to challenge a bankruptcy decision placing $250,000 of allegedly their funds into the hands of Appellee.

### 2. Prudential Standing Analysis

The Third Circuit has established a three-part test for assessing whether a party satisfies prudential standing:

> First, prudential standing requires that a litigant assert his or her own legal interests rather than those of a third party. Second, courts refrain from adjudicating abstract questions of wide public significance amounting to generalized grievances. Third, a plaintiff must demonstrate that his or her interests are arguably within the zone of interests that are intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

Mariana v. Fisher, 338 F.3d 189, 204 -205 (3d Cir. 2003) (relying on Oxford, 271 F.3d at 145).

Here, Appellee Stratus argues that the Appellant does not meet the first requirement of the Third Circuit prudential standing analysis. (Appellee's Br. p. 27). Appellee argues that since Carbone advanced the funds to DiMuzio who then promised them to Stratus, Carbone is not asserting her *own* legal rights and interests. (Id.) A determination of prudential standing requires a litigant to assert his or her own legal interests rather than those of a third party. Since Appellant put up her own funds in the amount of $250,000, allegedly for DiMuzio to conduct the negotiations, the Court finds that for the purposes of prudential standing, Appellant is asserting her own legal interest in the $250,000.

Although the Appellee does not contest the last two prongs of prudential standing, the Court nevertheless determines that neither prong was in issue in this case, and therefore holds that Appellant has prudential standing.

### 3. "Person Aggrieved" Standard for Bankruptcy Appeals

To appeal the decision of a bankruptcy court, the Third Circuit has adopted the "person aggrieved" standard. Richardson v. Treacy, Shaffel, Moore & Mueller, 2005 WL 2130081 (D.N.J. 2005) (citing In re Dykes, 10 F.3d 184, 187 (3d Cir. 1993); In re Combustion Eng'g, Inc., 391 F.3d 190, 214 n. 20 (3d Cir. 2004) (discussing the retention of the requirement)). Said standard first appeared in section 39(c) of the Bankruptcy Act of 1898, 11 U.S.C. §§ 67(c) (repealed 1978). The "persons aggrieved" test limits bankruptcy appeals to persons "whose rights or interests are 'directly and adversely affected pecuniarily' by an order or decree of the bankruptcy court." In re Dykes, 10 F.3d at 187 (citing In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983). The party seeking appellate standing "must show that the order of the bankruptcy court 'diminishes their property, increases their burdens, or impairs their rights.'" In re Combustion Eng'g, Inc., 391 F.3d at 214 (citing In re PWS Holding Corp., 28 F.3d 224 (3d Cir. 2000)) (citations omitted). Appellate standing within the bankruptcy context is more restrictive than the concept of Constitutional standing due to the aim of reducing protracted litigation during bankruptcy proceedings. In re Combustion Eng'g, Inc., 391 F.3d at 215 (citing In re Fondiller, 707 F.2d at 443).

The determination of appellate standing is generally treated as a question of fact for the district court. In re Combustion Eng'g Inc., 391 F.3d at 214 (citing In re Dykes, 10 F.3d at 188). Here, Stratus argues that the Appellant does not achieve the requisite status of a "person aggrieved" since Mrs. Carbone had already turned over the $250,000 to DiMuzio at the time that the Stratus-DiMuzio negotiations took place. Thus, Stratus asserts, Appellant lacks a direct injury to her financial interests since she had already parted ways with the funds This Court disagrees. The ultimate effect of the Bankruptcy Court's Order is, inescapably, that Mrs. Carbone no longer

has $250,000 that she had in her possession two years ago. The Carbones and their counsel attended both hearings conducted by the Honorable Donald H. Steckroth in September 2004 and as a result of Judge Steckroth's Order of September 28, 2004, the Carbones no longer have rights to the $250,000 they handed over to Lowenstein Sandler, P.C. These proffered facts are sufficient to constitute a showing that Appellant is a "person aggrieved" and thus, possesses standing to appeal the subject Order of the Bankruptcy Court.

B.   **Standards of Review**

   1.   **Procedural Decisions of the Bankruptcy Court**

This Court employs an abuse of discretion standard when reviewing exercises of discretion by the Bankruptcy Court. In re Continental Airlines, 203 F.3d 203, 208 (3d Cir. 2000). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999) (citing Marco v. Accent Pub. Co., 969 F.2d 1547, 1548 (3d Cir. 1992). Upon review, an abuse of discretion will be found if the bankruptcy judge acted in an irrational, arbitrary or capricious manner "clearly contrary to reason and not justified by the evidence." Vizzini v. Ford Motor Co., 569 F.2d 754, 760 (3d Cir. 1977). Challenges to the scope and opportunity for discovery are reviewed under an abuse of discretion standard. In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311, 323 (3d Cir. 2003).

Appellant argues that Judge Steckroth erred in quashing the subpoena of Nancy Washington, counsel for Stratus, and Robert Forst, the first proposed buyer of assets, and by not permitting discovery before a full plenary hearing. During the Bankruptcy Court hearings, Counsel for Appellant argued that Ms. Washington was needed as a fact witness and that since Mr. Forst was present at the earlier hearings in May of 2004, his "understanding" of what transpired would be helpful. Counsel requested further discovery to determine the extent of Stratus's involvement in the sale after the money was placed in the trust account.

In the transcripts of the Bankruptcy Court Hearing held September 7, 2004 (hereinafter "September 7 Hearing") and September 15, 2004 (hereinafter "September 15 Hearing"), Judge Steckroth addressed Appellant's requests to allow the subpoenas and to permit further discovery. The Judge quashed the subpoena of Ms. Washington on the grounds that by testifying, she would disadvantage her client, that her understanding of the agreement had been put on the record many times and because he would not require her to testify as to her "mental impressions." (September 15 Hearing p. 65). Judge Steckroth also quashed the subpoena issued to Robert Forst. Judge Steckroth reasoned that since what occurred during the May hearings was on the record, the court would not need a witness to recount his understanding of what had taken place. Finally, Judge Steckroth denied Appellant's request for further discovery and instead decided the motion at the September 15 Hearing.

This Court finds that Judge Steckroth did not abuse his discretion when he quashed the subpoenas and denied counsel's request for further discovery. These decisions came after two days of extensive hearings and testimony with which the Judge was obviously very familiar. This Court does not determine that Judge Steckroth's decision that no further evidence or testimony was necessary was arbitrary or irrational. Rather, it seems to this court, that his decisions were founded on the prior and surrounding circumstances of the case with which he was very familiar, his clear understanding of the testimony and his lack of need for further testimony as to matters already known to him.  This Court therefore concludes that the Bankruptcy Court did not abuse its discretion by quashing the subpoena for Nancy Washington and Robert Forst nor by denying Appellant's request for further discovery.

### 2.    Standard of Review for Bankruptcy Appeal

Pursuant to 28 U.S.C. § 158 (a), "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees; (2) from interlocutory orders and decrees ... and (3) with leave of court from other interlocutory orders and decrees."

The district court reviews findings of fact under a clearly erroneous standard. Fed.R.Bankr.P. 8013; In re Sharon Steel Corp., 871 F.2d 1217, 1223 (3d Cir. 1989). Legal conclusions of the bankruptcy court are subject to plenary review. J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp, 891 F.2d 66, 69 (3d Cir. 1989); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981).

Although the Appellant attempts to cast her assertions regarding errors by Judge Steckroth as errant legal conclusions, this Court determines that Judge Steckroth's conclusions were instead factual in nature. Interpretation of the terms of the agreement comprises the essence of this appeal. Since these are factual, not legal interpretations, pursuant to Bankruptcy Rule 8013 of the Federal Rules of Bankruptcy Procedure this Court will review Judge Steckroth's findings under the clearly erroneous standard. A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Cellnet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013.

Judge Steckroth, in his opinion on the Lowenstein Sandler, P.C. motion, issued at the September 15 Hearing, set forth the reasons supporting his determination that the $250,000 was not a condition of sale, but instead a sale of Stratus's claim. He stated "[i]t is the Court's view, based on the record of May 18th, the structure of the sale and other evidentiary circumstances that the $250,000 was negotiated for and paid or agreed to be paid to Stratus *without a condition* ... " (September 15 Hearing, p. 78-79) (emphasis added). Judge Steckroth relied on the fact that during the May 18th hearing on the proposed sale, Nancy Washington, Esq. stated that to her knowledge, Stratus had not agreed to any conditions of sale. A representative of Lowenstein

Sandler, P.C., although present at the hearing, did not object to this interpretation. Judge Steckroth interpreted the lack of objection to be an indication that there was in fact, no condition to the sale. The Judge also relied upon the structure of the sale to support his conclusion that there indeed was no condition. He concluded that if the parties had actually negotiated a condition there would have been no need to use a trust account intermediary to hold the funds. Rather, Judge Steckroth reasoned, Carbone would simply have attended the closing of the sale and transferred the money to Stratus upon closing. (September 15 Hearing, p. 22-23). To bolster this determination, Judge Steckroth also noted that it is common to see sales of claims during bankruptcy proceedings. (September 7 Hearing, p. 22).

There is ample evidence in the record to support Judge Steckroth's determination and his credibility judgments with regard to certain witness testimony. During the hearings the Judge gave every opportunity to both sides to present their case and carried the hearing into a second day to give Appellant the chance to put Mr. Raymond and Mr. Carbone on the stand. (September 7 Hearing, p. 31). As a result of the failure of Stratus and DiMuzio to memorialize their negotiations in writing, the testimony offered during the hearings and Judge Steckroth's interpretation of that testimony took on even greater importance. The Judge also played an active role during the questioning of the witnesses, at times drawing out facts and information that he felt were of importance.

When Judge Steckroth made his ultimate determination regarding the terms of the agreement between Stratus and DiMuzio, he was obviously very familiar with the parties, testimony and facts surrounding the DiMuzio bankruptcy and the DiMuzio-Stratus negotiations. The Judge utilized his knowledge of and familiarity with the bankruptcy system and its processes as a backdrop for interpretation of the testimony and documents entered into evidence. With this as a foundation, he reviewed the certifications and testimony of both Carbone and Raymond, the testimony of additional witnesses and the record on the whole and drew his own conclusions

concerning witness credibility as to their proffered positions. This Court is not left with a "definite and firm conviction" that Judge Steckroth committed a mistake. In re Cellnet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Nor does the Court determine that his findings concerning the terms of the agreement were clearly erroneous.

## CONCLUSION

For the foregoing reasons set forth above, it is on this 21st day of October, 2005,

**ORDERED** that Judge Steckroth's September 28, 2004 Order granting Appellee Stratus's cross-motion to order the turnover of funds held in a trust account is AFFIRMED; and it is further

**ORDERED** that Appellant Josephine Carbone's appeal of the September 28, 2004 Order is hereby DISMISSED.

This case is **CLOSED**.

DATED: October 21, 2005                                      /s/ Jose L. Linares

                                                         Jose L. Linares
                                                         United States District Judge

13